

# THE ATTORNEY GENERAL

# OF TEXAS

AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

August 4, 1948

Hon. Jack C. Altaras        Opinion No. V-647
County Attorney
Johnson County            Re: The interest of the State in
Cleburne, Texas                 certain real property as a
                                        result of delinquent tax
                                        sales, under the submitted
                                        facts.

Dear Mr. Altaras:

         You requested the opinion of this office as follows:

         "In brief the facts are as follows: The pres-
ent owner of certain lots #8 and 9 in block 38 of
the City of Alvarado, Johnson County, Texas, pur-
chased said lots on June 11, 1936, from J. B. Poin-
dexter, a record owner; and this present owner
has had continuous possession of the lots and
paid taxes on them from the date of purchase.
The abstract of title to these lots indicate that
in 1891 these lots were sold to the State of Texas
under a judiciary tax sale. In this particular suit
a judgment was taken against Fred Edmonston
who was not a record owner and as far as the
record appears had no interest in the property.
In 1896 the same lots were sold under another ju-
diciary tax sale to the State of Texas, the judg-
ment in this case having been taken against F. R.
Gonzales who was a record title owner. Both
deeds to the State of Texas were recorded in the
office of the County Clerk of Johnson County.

         "Both the records of the tax collector of
Johnson County and the records from the Comp-
troller indicate that there were no delinquent
taxes for the year 1896 for which the suit was
brought, and that the taxes for the year 1891 were
redeemed by J. B. Poindexter more than 2 years
after the judgment, that is, in 1925.

         "The question presented is whether or not
the State of Texas has any interest in these lots
since they were conveyed to the state by a deed

and never conveyed out of the state. If the state
of Texas does have an interest or title in these
lots, what is the correct procedure for convey-
ing the title out of the State of Texas?

"Article 7329 and the case of McMillan vs
Owen 209 SW(2) 622 suggests that title is in the
State unless the property is redeemed within
two years. Under the facts above stated the
property was not redeemed within two years
which presents the question of whether or not
the state of Texas can and did waive the two
year redemption period.

"The taxes were redeemed in 1925 as stated
above and the following is a quotation from the
certificate of redemption indicating that the State
of Texas had waived the right of redemption with-
in two years and had permitted the taxes to be re-
deemed thereafter:

"'In view of the above and foregoing and in
accordance with law governing the redemption of
lands sold to the state or delinquent for taxes, any
sale or delinquency to the State of Texas, of the
above described real estate, for taxes for the
years specified herein, or for any year or years
prior to Jan. 1, 1885, should be and is held for
naught, and should in no way operate as embar-
rassment or encumbrance to the title of the own-
er thereof, such sale or delinquencies being here-
by declared cancelled on the records of this of-
fice, and said land redeemed from the State for
the years stated herein.'"

In response to our request for additional informa-
tion, you have kindly furnished us a copy of the redemption re-
ceipt issued to J. B. Poindexter in 1925, the then owner, cover-
ing the taxes due for the year 1891, the first sale to be consider-
ed. You have also furnished us a certified copy of the judgment
covering alleged delinquent taxes for the year 1896, together
with the sheriff's deed to the State for 1896 taxes, the second
sale to be considered.

We shall first consider the 1891 sale. In 1891 there
was no specific statutory authority for the sale of real estate
for the delinquent taxes due thereon by judicial proceedings,
but only summary sale by the tax collector was provided for.
This method, however, was not exclusive so as to preclude col-

lection by judicial process if the taxing authority should choose to adopt that method. This was determined by the Supreme Court as early as 1894 in the case of City of Henrietta v. Eustis, 26 S.W. 619. Judge Nickels in the case of State Mortgage Corp. v. State, 17 S.W. (2d) 801 (Comm. of App.) confirmed this in the following language:

> "Summary procedure provided or forecasted in the Constitution (section 15, art. 8) does not preclude enforcement of the lien through user of equity jurisdiction. City of Henrietta v. Eustis, 87 Tex. 14, 26 S.W. 619."

We think any apparent claim that the State may now have growing out of this sale may be disposed of with the explanation that follows. First, that since it affirmatively appears that the suit was against a defendant who was not the record owner and that the record owner was not made a party to the suit, the judgment for the 1891 taxes was, therefore, void and passed no title to the State by virtue of the sale thereunder. Second, J. B. Poindexter, the owner in 1925, redeemed from the 1891 sale, whether timely or not is immaterial. If the 1891 judgment was void for the reasons pointed out above, the owner had the right to pay the delinquent taxes for said year without reference to the judgment and sale thereunder. The Comptroller has issued his certificate in effect as follows:

> "In view of the above and foregoing and in accordance with law governing the redemption of lands sold to the State or delinquent for taxes, any sale or delinquency to the State of Texas, of the above described real estate, for taxes for the years specified herein, or for any year or years prior to January 1, 1885, should be and is held for naught, and should in no way operate as embarrassment or encumbrance to the title of the owner thereof, such sale or delinquencies being hereby declared canceled on the records of this office, and said land redeemed from the State for the years stated herein."

In any event, we would not be justified in going behind this certificate of the Comptroller, which shows the payment of the taxes and the receipt thereof by the State and the relinquishment of any claim of the State by virtue thereof. The same is binding upon us and the State. Third, and last, as we hereinafter point out in our comment upon the 1896 sale and our former Opinion V-420, we think the 1925 redemption by J. B. Poindexter was authorized under the first part of Article 7291 and had the effect to extinguish any claim of the State for the 1891 taxes, even con-

ceding the validity of the judgment.

We consider next the 1896 sale. We think this is a good place to correct the statement made in our Opinion V-420, a copy of which is herewith enclosed, wherein we stated categorically that Article 7291, V.C.S. applied to summary sales and not to judicial sales, and, therefore, the Comptroller would not have authority to cancel a sale made under judicial process. In this we were partly in error.

We are of the opinion that this statute should be divided into two parts, as follows:

(1) "The owner of real estate which has been bought in by the State for taxes, or his heirs or assigns, may redeem the same at any time prior to the sale thereof, by the payment to the collector of the county in which such real estate is situated or to the Comptroller, if in an unorganized county, of the amount designated by the Comptroller as due thereon with costs of advertisement. . ."

(2) "And if it shall at any time appear to the satisfaction of the Comptroller that any land has been sold to the State for taxes which have been paid, . . . he shall . . . cancel such sale; and deliver to the owner of the land, or his agent, a certificate under seal of his department, setting forth the facts . . . that such sale has been canceled; which certificate shall release the interest of the State and the same may be recorded in the proper county as other conveyances of real estate are recorded."

We should keep in mind that these two divisions of Article 7291 have two separate and distinct objects: the first applies to redemption from the State where sale is made for delinquent taxes actually due; and the second applies to sales erroneously made to the State where no taxes were due or delinquent.

We think the first part of this statute, as indicated above, dealing with redemption from the State, does apply to summary sales and not to judicial sales, except judicial sales made prior to 1895; and that the second part indicated above dealing with sales to the State where the taxes have been previously paid applies alike to summary and judicial sales. Therefore, our statement in Opinion V-420 is modified accordingly. However, as pointed out in Opinion V-420, the person in that opinion seeking a cancellation of a judicial sale could not qualify for the relief sought under said article as he was neither an owner, heir, or assignee. The conclusion reached in Opinion V-420 may have well rested alone upon this ground without determining wheth-

er Article 7291 applied exclusively to summary sales or in part
to summary and judicial sales.

An explanation is in order, however, for a better un-
derstanding of the construction we now place upon Article 7291.
As pointed out in our Opinion No. 0-6277, a copy of which is
herewith enclosed, this article was taken from Chapter 19, Page
31, S.S. 18th Legislature, 1883. This 1883 act amended Section 3
of the 1879 act (Sec. 3 of said 1879 act is now incorporated in
said Art. 7289, V.C.S.) so that the same reads as Article 7291,
V.C.S. read at the time of the passage of the 1895 act providing
for the first time by statute for judicial sales and as it now reads.
As pointed out above, only summary sales were provided for by
statute in 1891; but this method of sale of real estate for delin-
quent taxes was not exclusive, and judicial foreclosure and sale
thereunder was sanctioned. Since judicial sales were not pro-
vided for by statute in 1891, there was, of course, no specific
statutory provision for redemption from such sales. But, in
order not to deny the owner his constitutional right of redemp-
tion, it must be conceded that as to the 1891 taxes, Article 7291
afforded a right of redemption from judicial as well as from
summary sales. This right acquired in 1891 became vested as
of that date and could be legally exercised in 1925, as was done
by J. B. Poindexter, the then owner. However, judicial sales
were specifically provided for by statute in 1895, and in that
act provision was also made for redemption within two years
from the date of sales made under the act. Said act kept intact,
however, the first part of Article 7291, as indicated above, and
obviously was there meant to have reference to delinquent tax-
payers whose lands had theretofore been reported sold to the
State for taxes under summary sales and to judicial sales prior
to 1895. This first judicial sales act repealed all laws and parts
of laws in conflict with it, and it omitted from its provision the
second part of Article 7291, set out above. This had the effect
to leave it without change, since it is not in conflict with any
other provisions of the act. The 1895 judicial sales act was a-
mended in 1897, but without change as to the terms of redemp-
tion of land sold under the terms of the act and this act also
carried forward the first part of Article 7291 as indicated above,
but again without reference to the second part of said Article
7291. This 1897 act also repealed all laws and parts of laws in
conflict with its provisions. Since the second part of Article
7291 was not in conflict with any of the provisions of the 1895
act or the 1897 act, the same continued in effect, and must, we
think, be construed as applying to both summary and judicial
sales. Simply stated, upon the inauguration of the judicial sales
act in 1895 and its amendment in 1897, the Legislature intended
that thereafter the first part of Article 7291 would apply exclu-
sively to summary sales and that the second part of said Article
7291 would apply to both summary and judicial sales.

From 1895 and prior to 1929, when the Forty-first Legislature, Page 103, enacted Article 7328a as follows:

"That all sales of real estate made for the collection of delinquent taxes due thereon shall be made only after the foreclosure of tax lien securing same has been had in a court of competent jurisdiction in accordance with existing laws governing the foreclosure of tax liens in delinquent tax suits,"

both summary and judicial sales prevailed under appropriate statutory authority. The foregoing first part of Article 7291 continued to afford a method of redemption from summary sales made by the collector and the respective judicial acts afforded a different method of redemption from sales made under judicial foreclosure.

From the foregoing we conclude that the State does not have any present claim to the real property here involved by reason of the 1891 sale, and the redemption certificate of the Comptroller issued under the terms of Article 7291, V.C.S. in 1925 is effective to release any claim of the State to the owner. If there were no delinquent taxes owing for 1896 for which suit was filed and sale had thereunder, a certificate of the Comptroller as provided in Article 7291 will be effective to extinguish any apparent claim in behalf of the State by reason of said sale. It is observed that the statute provides for the recording of these certificates in the county clerk's office as other conveyances pertaining to real estate.

## SUMMARY

A delinquent tax suit, judgment, and sale against a nonowner of real estate, and without making the record owner a party to the suit, is a nullity and passes no title under a purchase by the State. In 1891 there was no statutory provision authorizing suits to foreclose tax liens, but foreclosure suits and sales thereunder were sanctioned. The owner, his heirs or assignees had a right of redemption under Art. 7291, V.C.S. from such sales. The State cannot go behind the certificate of the Comptroller showing the payment and receipt of the taxes by the State and the redemption thereof by the owner, for 1891 taxes, although not redeemed until 1925. Release of the State's claim of any interest in the land is accomplished by the Comptroller's certificate of redemption.

The first part of Art. 7291, V.C.S., dealing with the redemption from the State of real estate sold for delinquent taxes, applied to judicial foreclosure sales as well as summary sales up to the initiation of the judicial sales act in 1895. Subsequent to the initiation of the judicial sales act in 1895, this first provision of the statute applied only to summary sales. But the last part of said article, dealing with lands sold to the State in satisfaction of delinquent taxes which in fact had been paid, applies alike to judicial and summary sales. The Comptroller is authorized to cancel such a sale upon the records of his office and to issue certificate showing that no taxes were due for which the land was sold, and the recording of such certificate by the owner is evidence of the relinquishment by the State of any interest in behalf of the State in such real estate arising under such a sale. City of Henrietta v. Eustis, 26 S.W. 619; State Mortgage Corp. v. State, 17 S.W. (2d) 801; Art. 7291, V.C.S. Opinion No. V-420 modified.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By          *L. P. Lollar*

L. P. Lollar
Assistant

LPL/JCP
Enclosures

APPROVED

*Fagan Dickson*

FIRST ASSISTANT
ATTORNEY GENERAL